UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LARRY THOMPSON,

                                    Plaintiff,

              -against-

THE CITY OF NEW YORK, POLICE OFFICER PAGIEL CLARK, Shield #28742, POLICE OFFICER PAUL MONTEFUSCO, Shield # 10580, POLICE OFFICER GERARD BOUWMANS, Shield # 2102, POLICE OFFICER PHILLIP ROMANO, Shield # 6295, POLICE OFFICER WARREN RODNEY, Shield # 13744, SERGEANT ANTHONY BERTRAM, Shield #277, POLICE OFFICERS JOHN/JANE DOE(S) #S 1-10,

                                    Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS' STATEMENT PURSUANT TO LOCAL RULE 56.1**

1:14-cv-07349-SLT-RML

        Defendants City of New York, Pagiel Clark ("Clark"), Paul Montefusco ("Montefusco"), Gerard Bouwmans ("Bouwmans"), Phillip Romano ("Romano"), Warren Rodney ("Rodney") and Anthony Bertram ("Bertram") submit this statement pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York to set forth the material facts as to which defendants contend there are no genuine issues to be tried.

**A.**     <u>**The 911 Call**</u>

        1. On January 15, 2014, at approximately 10:00 p.m., Camille Watson called 911 to report that her two week old niece was being sexually abused by the baby's father at 339 Lincoln Place, Apt. 2E in Brooklyn, New York. (I/Net Dispatcher Event Chronology No. D14011523758 at 1, annexed to the Declaration of Kavin Thadani dated January 20, 2017 ('Thadani Decl.") as Exhibit A.)

2. Ms. Watson further reported that the baby had red rashes on her buttocks area. (*Id.*)

3. Ms. Watson identified herself by name and described the alleged perpetrator, the baby's father, as a 41 year old male black with brown skin. (*Id.*)

4. Ms. Watson also stated that the alleged perpetrator, the baby's father, was about 5'5" tall and weighed about 150 pounds. (*Id.*)

**B.**     **The EMTs Arrive on Scene and Plaintiff Prevents Them from Investigating the Child Abuse Complaint**

5. Following Ms. Watson's 911 call, two emergency medical technicians ("EMTs") were directed to respond to the location to investigate a report of suspected child abuse. (Dillahunt Dep. at 9:16-17, 11:22-24, Thadani Decl., Ex. B; Marturano Dep. at 8:19-9:2, Thadani Decl., Ex. C.)

6. More specifically, the EMTs were told that a baby was being molested and touched at the location. (Dillahunt Dep. at 9:18-24, Thadani Decl., Ex. B.)

7. When the EMTs arrived on scene, they were met by Ms. Watson, who informed the EMTs that she was the one who called 911. (Dillahunt Dep. at 11:25-13:6, Thadani Decl. Ex. B; Marturano Dep. at 10:14-11:6, Thadani Decl., Ex. C.)

8. Ms. Watson informed the EMTs that she called 911 because her sister's husband was touching the baby inappropriately and asked them to follow her upstairs. (Marturano Dep. at 11:7-21, Thadani Decl. Ex C; Dillahunt Dep. at 13:10-19, Thadani Decl., Ex. B.)

9. Based on what Ms. Watson told them, the EMTs believed that they had to check on the welfare of the baby. (Marturano Dep. at 11:22-12:2, Thadani Decl., Ex. C.)

10. The EMTs went up to plaintiff's apartment, explained that they received a 911 call and asked to check to make sure everybody was alright. (*Id.* at 22:14-23:3.)

11. Plaintiff refused to allow the EMTs to investigate and so the EMTs waited for the police to arrive. (Plaintiff Dep. at 23:9-18, Thadani Decl., Ex. D; Marturano Dep. at 22:14-23:3, Thadani Decl., Ex. C; Dillahunt Dep. at 21:8-22:10, Thadani Decl., Ex. B.)

C.  **The Police Arrive on Scene**

12. Following Ms. Watson's 911 call, police officers Clark, Montefusco, Bouwmans and Romano were directed to respond to the location to investigate a report of sexual abuse / assault of a baby in progress. (Clark Dep. at 29:17-22, Thadani Decl., Ex. E; Bouwmans Dep. at 10:10-17, Thadani Decl., Ex. F; I/Net Dispatcher Event Chronology No. D14011523758 at 3, Thadani Decl., Ex. B.)

13. The officers were also provided with, *inter alia,* the age of the baby and a description of the alleged perpetrator and were informed, *inter alia*, that the call was made by an identified female from inside the location and that the suspect was the baby's father. (Clark Dep. at 29:17-22, 31:18-24, Thadani Decl., Ex. E; Bouwmans Dep. at 11:16-12:2, 49:5-24, Thadani Decl., Ex. F; Montefusco Dep. at 70:7-21, 73:12-16, Thadani Decl., Ex. G.)

14. When the officers arrived on scene, they were met by the EMTs, who informed the officers, *inter alia*, that the plaintiff, the alleged perpetrator, was aggressive and wouldn't let them into the apartment to investigate. (Dillahunt Dep. at 44:19-45:4, Thadani Decl., Ex. B; Marturano Dep. at 28:22-29:7, Thadani Decl., Ex. C; Clark Dep. at 43:2-17, Thadani Decl., Ex. E; Bouwmans Dep. at 16:2-11, Thadani Decl., Ex. F.)

15. The EMTs further informed the officers that they spoke with the 911 caller, that she was very scared, and that she told them she was afraid the plaintiff would get violent.

(Romano Dep. at 10:11-11:14, Thadani Decl., Ex. H; Montefusco Dep. at 22:11-23:2, Thadani Decl., Ex. G.)

16. The EMTs also gave the officers a sense of urgency that the baby may be in danger and informed the officers that they had to check on the baby. (Bouwmans Dep. at 17:10-18:2, Thadani Decl., Ex. F; Dillahunt Dep. at 45:5-16, Thadani Decl., Ex. B; Marturano Dep. at 28:22-29:7, Thadani Decl., Ex. C; Romano Memobook, Thadani Decl., Ex. I.)

**D.    Plaintiff Prevents the Officers from Investigating the Child Abuse Complaint by Refusing Entry into His Apartment**

17. The officers knocked on plaintiff's apartment door and informed him that they received a complaint that he was abusing his child and that they needed to come in to investigate. (Plaintiff Dep. at 26:17-19, 35:16-23, Thadani Decl., Ex. D.)

18. Plaintiff fit the description of the perpetrator provided to the officers. (Clark Dep. at 38:25-39:24, Thadani Decl., Ex. E.)

19. Plaintiff verbally refused to let the officers or the EMTs into his apartment to investigate. (Plaintiff Dep. at 38:10-13, Thadani Decl., Ex. D; Montefusco Dep. at 34:2-15, Thadani Decl., Ex. G; Clark Dep. at 69:17-21, 71:4-11, Thadani Decl., Ex. E; Marturano Dep. at 30:10-19, Thadani Decl., Ex. C; Dillahunt Dep. at 53:18-54:6, Thadani Decl., Ex. B.)

20. The officers then arrested plaintiff for, *inter alia*, Obstruction of Governmental Administration in the Second Degree. (Arrest Report No. K14604357, Thadani Decl., Ex. J.) (stating that the "[arresting officer] did respond to a radio run . . . at [39 Lincoln Place, Apt. 2E] for suspected child abuse. Upon arrival, [the arresting officer] attempted to gain entry into the  . . . location, however the suspect refused to allow [the arresting officer] to enter the location.")

21. Prior to arresting plaintiff, one of the EMTs pointed out the 911 caller, who he had previously met, and who was inside the apartment. (Dillahunt Dep. at 58:24-59:14, 60:25-61:11, Thadani Decl., Ex. B.)

22. Prior to arresting plaintiff, the officers observed the 911 caller inside the apartment, who appeared to be very scared, and also heard a baby crying very loudly. (Montefusco Dep., at 35:7-36:16, Thadani Decl., Ex. G.)

23. After plaintiff was arrested, the officers and EMTs made entry into the apartment and the baby, who had visible red markings on her buttocks, and her mother were transported to Kings County Hospital for further evaluation. (Arrest Report No. K14604357, Thadani Decl., Ex. J.)

24. Sergeant Bertram arrived on scene after plaintiff was arrested and never went inside the apartment building. (Bertram Dep. at 12:24-13:4, 15:9-10, Thadani Decl., Ex. K.)

**E.    Plaintiff Complains of Pain and is Transported to the Hospital**

25. While at the police precinct, plaintiff complained of pain to his neck, lower back and right shoulder. (Plaintiff Dep. at 67:4-13, Thadani Decl., Ex. D; Medical Treatment of Prisoner Form, Thadani Decl., Ex. L; FDNY Prehospital Care Report Summary, Thadani Decl., Ex. M.)

26. Plaintiff was subsequently transported by ambulance to Interfaith Hospital for evaluation and treatment. (Plaintiff Dep. at 66:20-22, Thadani Decl., Ex. D; Third Amended Complaint at ¶¶ 16-17; Medical Treatment of Prisoner Form; Thadani Decl., Ex. L; FDNY Prehospital Care Report Summary, Thadani Decl., Ex. M.)

27. Officer Rodney escorted plaintiff to the hospital from the precinct but was not involved in plaintiff's arrest and never went to the scene of plaintiff's arrest. (Rodney Dep. at 6:3-5, 6:21-23, Thadani Decl., Ex. N.)

28. At the hospital, plaintiff complained of pain to his lower back, shoulder and neck and was diagnosed with a back contusion, injury to the neck and shoulder strain. (Interfaith Hospital Records, Thadani Decl., Ex. O.)

29. Plaintiff was not diagnosed with any acute fractures. (*Id.*)

**F.     The Criminal Charges are Dismissed in the Interest of Justice**

30. On April 9, 2014, the criminal charges against plaintiff were dismissed after the Assistant District Attorney informed the court that she was dismissing the case "in the interest of justice." (Apr. 9, 2014 Criminal Court Transcript, Thadani Decl., Ex. P.)

Dated: New York, New York
January 20, 2017

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York  10007
(212) 356-2351

By:     /s/ Kavin Thadani
Kavin Thadani
Senior Counsel
Special Federal Litigation Division

TO:     **VIA ECF**
David Zelman, Esq.
*Attorney for Plaintiff*