UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

 LARRY THOMPSON,

                            Plaintiff,


           -against-

THE CITY OF NEW YORK, POLICE OFFICER         Case No.:  14-cv-7349
PAGIEL CLARK, Shield # 28472,
POLICE OFFICER PAUL MONTEFUSCO,
Shield # 10580, POLICE OFFICER GERARD
BOUWMANS, Shield # 2102, POLICE OFFICER
PHILLIP ROMANO, Shield # 6295, POLICE
OFFICER WARREN RODNEY, Shield # 13744,
SERGEANT ANTHONY BERTRAM, Shield #277.
POLICE OFFICERS JOHN/JANE DOE(S) #S 1-10,

                        Defendants.
_____X


_____
**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____




LAW OFFICE OF DAVID ZELMAN

ATTORNEY FOR PLAINTIFF LARRY THOMPSON

612 EASTERN PARKWAY

BROOKLYN NEW YORK 11225

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................ 1

**STANDARD OF REVIEW** ............................................................................................... 1

**FACTUAL OVERVIEW** .................................................................................................. 2

**ARGUMENT** ..................................................................................................................... 3

    I.    Due Process Violation ................................................................................................ 3

    II.    False Arrest ................................................................................................................ 3

    III.    Defendants' Motion To Dismiss Plaintiff's Claim For Malicious Prosecution Should Be Denied. 7

        A.    Probable Cause .............................................................................................. 7

        B.    Favorable Termination ................................................................................... 8

        C.    Initiation ...................................................................................................... 10

        D.    Malice ......................................................................................................... 11

    IV.    Plaintiff's Denial of Fair Trial is Viable ................................................................ 12

    V.    Personal Involvement of Defendants Bertram and Rodney ................................... 16

    VI.    Qualified Immunity ................................................................................................ 18

**CONCLUSION** ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Statutes**

42 USC §1983 ................................................................................................................. 1, 12
CPL 170.40 ..................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................... 1

**Federal Cases**

*American Mfrs. Mutual Ins. Co. v. American Broadcasting-Paramount Theaters, Inc.,* 388 F.2d
    272 (2d Cir. 1967) ....................................................................................................... 2
Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). ........................................... 17, 18
*Anderson v. Creighton*, 483 U.S. 635, 644 (1987) ............................................................ 19
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ............................................... 1
*Arum v. Miller*, 273 F. Supp. 2d 229, 234-35 (E.D.N.Y. 2003) ....................................... 9
*Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015) ........................... 12
*Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 532 (S.D.N.Y. 2015) ........................... 10
*Boyd v. City of N.Y.*, 336 F.3d 72, 78 (2d Cir. 2003) ..................................................... 12
*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) ...................................................... 2
*Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ............................................. 12
*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) ................... 15
*Buie v. City of N.Y.,* No. 12 CV 4390 (RJD) (CLP), 2015 U.S. Dist. LEXIS 147642, at *29
    (E.D.N.Y. Oct. 30, 2015) .......................................................................................... 13
*Buie v. City of N.Y.*, No. 12 CV 4390 (RJD) (CLP), 2015 U.S. Dist. LEXIS 147642, at *29-30
    (E.D.N.Y. Oct. 30, 2015) .......................................................................................... 15
*Burt v. Aleman*, 2008 U.S. Dist. LEXIS 35846, *5 (E.D.N.Y. 2008) ............................ 10
*Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ...................................... 10
Carpenter v. City of New York, 984 F. Supp. 2d 255, 262, 269 (S.D.N.Y. 2013) ......... 17
*Case v. City of N.Y.*, 2017 U.S. Dist. LEXIS 19374, at *46-47 (S.D.N.Y. Feb. 10, 2017) .......... 16
Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 395 (S.D.N.Y. 2013) ....... 17
*Clay v. City of N.Y.*, 2016 U.S. Dist. LEXIS 128348, at *10 (S.D.N.Y. Sep. 9, 2016) ........ 7
*Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) ...................................................... 6
*Drummond v. Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007) ............................ 7
*Fappiano v. City of N.Y.*, 640 F. App'x 115, 118 (2d Cir. 2016) .................................. 12
*Feinberg v. City of N.Y.*, No. 99 CV 12127 (RCC), 2004 U.S. Dist. LEXIS 16098, at *12
    (S.D.N.Y. Aug. 12, 2004) ........................................................................................ 17
*Franks v. City of N.Y.*, 2015 U.S. Dist. LEXIS 72563, at *19 n.2 (E.D.N.Y. June 4, 2015) ........ 10
Gagnon v. Ball, 696 F.2d 17, 21 (2d Cir. 1982) .............................................................. 18
*Georgia v. Randolph*, 547 U.S. 103, 118, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006) ............... 21

*Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) ...................................................... 18, 19

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) .................................................................... 18

*Jenkins v. City of New York*, 478 F.3d 76, 87 (2d cir. 2007) ................................................ 19

*Jenkins v. City of NY*, 2013 U.S. Dist. LEXIS 33331, at *33-34 (S.D.N.Y. Mar. 6, 2013).......... 12

*Johnson v. City of N.Y.*, 2008 U.S. Dist. LEXIS 78984, at *21 (S.D.N.Y. Sep. 29, 2008) ........... 4

*Johnson v. City of New York*, 2008 U.S. Dist. LEXIS 78984 (SDNY 2008) ............................... 4

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) ........................................................................... 19

*Marom v. City of New York*, 2016 U.S. Dist. LEXIS 28466, 2016 WL 916424, at *5 (S.D.N.Y.
   Mar. 7, 2016) ...................................................................................................................... 7

*Minott v. Duffy*, 2014 U.S. Dist. LEXIS 49791, at *46 (S.D.N.Y. Apr. 8, 2014) ...................... 10

*Mitchell v. City of N.Y.*, 841 F.3d 72 (2d Cir. 2016).................................................................. 2

*Nelms v. Wellington Way Apartments, LLC*, 513 F. App'x 541, 545 (6th Cir. 2013)................... 21

*Nnodimele v. Derienzo*, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 9881, at *62
   (E.D.N.Y. Jan. 27, 2016)..................................................................................................... 16

*Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 161 (E.D.N.Y. 2014) .................................. 9

Osborne v. Harris Cty., 97 F. Supp. 3d 911, 926-27 (S.D. Tex. 2015) ....................................... 21

*Pearson v. Callahan*, 129 S. Ct. 808, 815 (Jan. 21, 2009)........................................................ 18

*Poventud v. City of N.Y.*, No. 07-CV-3998, 2015 U.S. Dist. LEXIS 29949, 2015 WL 1062186, at
   *8 (S.D.N.Y. Mar. 9, 2015).................................................................................................. 15

*Poventud v. City of New York*, 750 F.3d 121, 132 n.12 (2d Cir. 2014) ...................................... 12

*Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 442 (N.D.N.Y. 1998) ...................................... 10

Provost v. City of Newburgh, 262 F.3d 146, 155 (2d. Cir. 2011) ............................................... 16

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980)............................... 2

*Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010)............................................................... 12

*Rentas v. Ruffin*, 816 F.3d 214 (2d Cir. 2016) ........................................................................... 2

*Rentas v. Ruffin*, 816 F.3d 214, 221-22 (2d Cir. 2016)............................................................. 12

*Rhooms v. City of N.Y.*, No. 11-CV-5910 (PKC) (RER), 2017 U.S. Dist. LEXIS 49538, at *26
   (E.D.N.Y. Mar. 31, 2017) .................................................................................................... 11

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)...................................... 10, 12

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11 (2d Cir. 2014) ........................... 2

*Rounseville v. Zahl*, 13 F.3d 625, 628 (2d Cir. 1994).............................................................. 10

*Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994) ........................................................... 7

*Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1165 (9th Cir. 2014)..................... 21

*Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) ....................................................... 7

*Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 503 (S.D.N.Y. 2015)..................................... 20

*Scott v. City of Mt. Vernon*, No. 14-CV-4441 (KMK), 2017 U.S. Dist. LEXIS 47856, at *106
   (S.D.N.Y. Mar. 30, 2017).................................................................................................... 20

*Stansbury v. Wertman*, 2012 U.S. Dist. LEXIS 8153, 2012 WL 183849, at *9 (S.D.N.Y. Jan. 24,
   2012).................................................................................................................................. 12

*Stansbury v. Wertman*, 721 F.3d at 95 .................................................................................... 7

*Stevens v. City of N.Y.*, 2012 U.S. Dist. LEXIS 100825, at *16 (S.D.N.Y. July 17, 2012).......... 11

*Storey v. Taylor*, 696 F.3d 987, 996 (10th Cir. 2012)............................................................... 21

*Struthers v. City of N.Y.,* No. 12-CV-242, 2013 U.S. Dist. LEXIS 76916, at *46 (E.D.N.Y. May 31, 2013)...................................................................................................................... 14

*United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) ............. 16

*United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) ........................................................ 6

*United States v. Bosurgi,* 530 F.2d 1105 (2d Cir. 1976)............................................................... 1

*United States v. Elmore*, 482 F.3d 172, 178-79 (2d Cir. 2007) ................................................... 7

*United States v. Glover*, 957 F.2d 1004, 1010 (2d Cir. 1992) ...................................................... 6

*United States v. Hill*, 649 F.3d 258, 265 (4th Cir. 2011)............................................................ 21

*United States v. Timmann*, 741 F.3d 1170, 1179 (11th Cir. 2013) ............................................ 21

United States v. United States District Court, 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972) ...................................................................................................................... 20

*Walker v. City of N.Y.*, 974 F.2d 293, 299 (2d Cir. 1992)........................................................... 16

*Wilson v. Layne*, 526 U.S. 603, 614-15 (1999)........................................................................... 18

*Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007)............................................................ 19

**State Cases**

*Cantalino v. Danner*, 96 N.Y.2d 391, 396-97, 729 N.Y.S.2d 405, 409, 754 N.E.2d 164, 168 (2001) ...................................................................................................................... 10

*Pandolfo v. U.A. Cable Sys. of Watertown,* 171 A.D.2d 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991)......................................................................................................................... 7

## PRELIMINARY STATEMENT

On or about December 17, 2014 Plaintiff initiated the current action pursuant to 42 USC §1983 to seek redress for false arrest, excessive force, malicious prosecution, failure to intervene, denial of medical treatment and due process violations.   Defendants now move for partial summary judgment, pursuant Fed. R. Civ. P. 56  dismissing plaintiff's Due Process/Unlawful Entry claims, False Arrest claim, Malicious Prosecution claim, Denial of Fair Trial Claim, Denial of Medical Treatment Claim and all claims against defendants Bertram and Rodney. Defendants do not move for summary judgment with respect to plaintiff's Excessive Force claim and Failure to Intervene causes of action.   For the following reasons, with the exception of plaintiff's denial of medical treatment claim which plaintiff has abandoned, defendants' summary judgment motion should be denied in its entirety.

## STANDARD OF REVIEW

"Summary judgment is a drastic remedy which should be granted only when it is clear that the requirements of Fed. R. Civ. P. 56 have been satisfied."  *United States v. Bosurgi,* 530 F.2d 1105, 1110 (2d Cir. 1976).  Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In making this determination, the facts must be interpreted in the light most favorable to the non-moving party.  Id. at 255 (citation omitted).  As a result, the reviewing court must accept as true

1

the factual statements in the opposing party's affidavits, and draw all permissible inferences in the nonmovant's favor. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir. 1980).  In addition, any factual doubts are resolved in favor of the non-movant.  *American Mfrs. Mutual Ins. Co. v. American Broadcasting-Paramount Theaters, Inc.,* 388 F.2d 272 (2d Cir. 1967).  Recently, the Second Circuit has cautioned lower courts to be careful to construe the facts in the favor of non-moving parties and have issued reversals when District Courts have not adhered to this well-established rule. See,  *Mitchell v. City of N.Y.*, 841 F.3d 72 (2d Cir. 2016) ("…drawing all inferences in favor of the appellants, as we must, we conclude to the contrary that these facts are insufficient to establish on summary judgment as a matter of law that the officers had probable cause…") See also *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ( "[D]istrict courts should not engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003) (reversing summary judgment where the plaintiff offered a competing account of the facts supported by only a single document).

## **FACTUAL OVERVIEW**

The Court is respectfully referred to the plaintiff's Motion for Partial Summary Judgment pages 2-9 and plaintiff's Rule 56.1 Statement dated March 10, 2017 for a full recitation of the relevant factual history of this matter.

Additionally, with respect to defendants' current motion, relevant factual history will be provided within the arguments below to provide the Court with the context of defendants' arguments.

**ARGUMENT**

I.     Due Process Violation

Plaintiff directs the Court's to plaintiff's motion for summary judgment for a full discussion of defendants' due process violation in this matter. In their motion, defendants offer very little in terms of argument or analysis as to why defendants were permitted to forcefully enter plaintiff's home, over plaintiff's objection, as he spoke to them at the entrance to his apartment. As will be demonstrated below, the officers themselves admitted that they did not have probable cause to believe a crime had been committed when they arrived at the apartment as they were merely investigating the call that had come in. The officers and the EMT's were aware that the caller was mentally ill or mentally slow and that fact should have been taken into account before physically forcing themselves into the apartment. As will be argued below, there was either no corroboration of any allegation the officers observed or very limited observations which would not lead any reasonable person to believe a crime was committed or that there was any emergency situation requiring immediate assistance.

II.     False Arrest

The facts of this case demonstrate that the call received by the police did not create probable cause and nothing at the scene corroborated the content of the call. In fact, the prime observations at the scene were that the caller refused to discuss the matter with the EMT's and appeared mentally slow. Because the officers admit they were simply investigating this matter and had little to no corroboration when they arrived at the scene, probable cause did not exist at the time plaintiff was arrested.

Defendants cite to *Johnson v. City of New York*, 2008 U.S. Dist. LEXIS 78984 (SDNY 2008) to support their argument that plaintiff's false arrest claim does not lie. *Johnson* is instructive as to plaintiff's arguments. In J*ohnson*, the Court summarized and explained his holding as follows:

> The police responded to dispatcher reports of six separate 911 calls which indicated that a woman was screaming, furniture was banging, doors were slamming, and that "someone [was] getting hurt." (Pl. 56.1 Stmt. P 17.) When the police arrived, they observed Bongo crying hysterically and saw scrapes and cuts on her arms. She told them that plaintiff had physically removed her from the apartment. When the police banged on the door and told plaintiff to open up, plaintiff did not respond.
>
> Taking all of these circumstances into consideration, it was objectively reasonable for the police to conclude that plaintiff was guilty of the crime of harassment in the second degree.
>
> *Johnson v. City of N.Y.*, 2008 U.S. Dist. LEXIS 78984, at *21 (S.D.N.Y. Sep. 29, 2008)

The *Johnson* court goes on to hold that since there was probable cause to believe plaintiff was guilty of harassment, the Court would not consider the remaining charges. Although plaintiff was not initially charged with obstruction by police, the prosecutor added it to the criminal complaint. All of the charges against Johnson were dismissed following a bench trial. *Johnson* is instructive as the Court specifically references the corroboration which is lacking in *Thompson.* In *Johnson*, despite the fact that there were six 911 calls v. one in *Thompson* when officers arrived the Court specifically points to their observations in determining that probable cause existed. The Court found that the officers found a woman "crying hysterically" and "saw scrapes and cuts on her arms." The woman herself told police she was "physically" removed from the apartment. In *Thompson*, there is no corroborating evidence of any dispute, incident or need for emergency intervention. Initially, when the two EMTs actually entered the apartment, neither of them saw any reason for alarm. They were confronted with nothing but a normal domestic scene and a

4

man asking why they were there. (EBT Quentin Dillahunt, hereinafter "Pl. Ex. D", p. 20 line 8 to
p. 25 line 7) Add the fact that the 911 caller in *Thompson* refused to tell the EMT's why she
called and that the EMT's realized before they arrived at the apartment during the initial visit that
there was "something wrong with [the caller's] mind" it becomes clear that *Johnson* supports
plaintiff's argument that probable cause did not exist when officers arrived at plaintiff's
apartment and were refused entry. (Pl. Ex. D, p. 15 line 10 to p. 15 line 16).

Defendants argue that based upon the caller's statements "over the phone and at the
scene", the officers could have arrested plaintiff for Endangering the Welfare of a Child".
(Defendants Memo in Support, p. 9-10).  First, as argued in plaintiff's motion for partial
summary judgment, defendants spoliated the transcript of what the 911 caller in *Thompson* told
the 911 dispatcher.  The 911 dispatcher wrote "Investigate/Possible Crime: Possible Child
Abuse. Two week old. Father is sexually abusing  her. Perp MB 41 YO, Brown Skin, ABT 5 Ft 5
INS Tall, Weighs ABT 150 LBS, CB CELL (redacted), STS BABY HAS RED RASHES ON
HER BUTTOCKS AREA…" (Defendants discovery, hereinafter "Pl. Ex. A", Def 14).  As
mentioned above, prior to plaintiff's arrest, the caller had never spoken to police and had refused
to explain why she called 911.  Defendant Montefusco, the officer who admitted that it was his
decision to forcefully enter the apartment admitted that he never spoke to the caller before
arresting plaintiff.  (EBT Paul Montefusco, hereinafter "Pl. Ex. F", p. 34 line 11 to p. 36 line 10).
Montefusco further admitted that when he first arrived at the apartment, he was "just
investigating."  Montefusco testified as follows:

> Q. Was it your decision to go in or did someone tell you that you needed to go in?
>    MR. THADANI: Objection.
> A. No, the -- I have the -- when the door opened, and at first going up to the -- where he
>    was,

we were just still investigating to see what was going on. The door opened, and also
from what the EMS said that the woman was scared, I saw that woman, and she ran
in, and I hear a baby crying very loud, very high volume baby crying inside. So, it
was really -- that's when I
said, "We have to come inside."
Q. Because the baby was crying?
A. Well, it was based on --
MR. THADANI: Objection.
A. -- based on all the circumstances?
Q. That was part of it?
A. Yes.
Q. Did anything that that woman did or said at that time you influence you to want to go
inside            the apartment?
A. Well, she looked scared, and I heard the baby crying very loud.
Q. Again, was it your decision to go in or did someone instruct to you do that?
A. No, it was my decision. ((Pl. Ex. F, p. 35 line 7 to p. 36, line 10).

In *Thompson*, the officers admit they never spoke to the caller at the scene prior to arresting

plaintiff.  In addition, officer Montefusco admitted that when he arrived at the apartment he did

not have probable cause to arrest because he was "just investigating" the call and the

circumstances.  The two things he testified that he observed, a mildly retarded woman who

"looked scared" at the approach of police and a baby crying loudly, did not elevate this

investigation to probable cause to arrest for endangering the welfare of a child.  In fact, the

officers likely did not even possess reasonable suspicion to justify a *Terry* stop to believe a crime

was occurring at the time they arrested plaintiff.  "Reasonable suspicion requires more than an

"inchoate suspicion or mere hunch." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000)

(quoting *United States v. Glover*, 957 F.2d 1004, 1010 (2d Cir. 1992)). It "demands 'specific and

articulable facts which, taken together with rational inferences from those facts,' provide

detaining officers with a 'particularized and objective basis for suspecting legal wrongdoing.

*Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) "Police may briefly detain an individual for

questioning if they have a reasonable suspicion that criminal activity is afoot... [but] [r]easonable

suspicion requires more than an inchoate and unparticularized suspicion or hunch." *United States*

*v. Elmore*, 482 F.3d 172, 178-79 (2d Cir. 2007). "It is defendants who bear the burden of proving

that probable cause existed for the plaintiff's arrest." *Marom v. City of New York*, 2016 U.S. Dist.

LEXIS 28466, 2016 WL 916424, at *5 (S.D.N.Y. Mar. 7, 2016) (quoting *Savino v. City of New*

*York*, 331 F.3d 63, 76 (2d Cir. 2003)).  *Clay v. City of N.Y.*, 2016 U.S. Dist. LEXIS 128348, at

*10 (S.D.N.Y. Sep. 9, 2016).  Here, defendants have not met their burden as officer

Montefusco's investigation was not elevated to the level of probable cause due to a baby's

crying[1] and a scared, mildly retarded woman whom he never spoke to prior to the arrest.

III.   Defendants' Motion To Dismiss Plaintiff's Claim For Malicious Prosecution Should
Be Denied.

A.  Probable Cause

It should be pointed out that the probable cause standard used in a malicious prosecution

analysis is of a higher quality than the probable cause needed to effectuate an arrest, See,

*Stansbury v. Wertman*, 721 F.3d at 95 ("[T]he probable cause standard in the malicious

prosecution context is slightly higher than the standard for false arrest cases."; See also

*Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994) ("In the context of a malicious

prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or

apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for

prosecuting the defendant in the manner complained of.'" (quoting *Pandolfo v. U.A. Cable Sys. of*

*Watertown,* 171 A.D.2d 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991))). The determination of

probable cause in a malicious prosecution claim is "assessed in light of the facts known or

reasonably believed at the time the prosecution was initiated, as opposed to at the time of

arrest." *Drummond v. Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007) (collecting cases).

---

[1] Whether the baby was crying when the officers arrived is a disputed issue of fact as according
to a neighbor, the "baby was fine" either during or immediately after the police arresting plaintiff
with force.  (EBT S. P., hereinafter "Pl. Ex. G", p. 10 line 10 to p. 11 line 6)

Therefore, the fact that the baby was normal and that plaintiff was innocent of any wrongdoing, a fact not known to the officers at the time of the initial arrest, was known to the officers at the time of the commencement of the prosecution and when the District Attorney was consulted. This knowledge should have caused police to discontinue any attempt to prosecute plaintiff, however, the officers malicious proceeded to charge plaintiff with a crime they knew to be baseless.

As plaintiff previously argued in his motion for summary judgment, he is entitled to summary judgment on this issue.  However, at best, an issue of fact exists as to whether under all of the circumstances available at the time, probable cause to arrest existed at the time plaintiff was physical removed from in front of his apartment door and arrested.

B.  Favorable Termination

Defendants argue that Plaintiff cannot as a matter of law show the favorable termination of the prosecution against him because the case was allegedly "dismissed in the interest of justice."  As an initial matter, the criminal matter was not dismissed "in the interests of justice", it was simply dismissed on motion by the District Attorney's office.  The words "interest of justice" appear once in the dismissal minutes as the District Attorney standing before the Court on the day the case was dismissed uttered those words, however, the Court denied the request to dismiss the case in the interests of justice and simply marked the case "dismissed." (See Defendant's Ex. P).  In addition, the Court record and certificate of disposition both confirm that the case was dismissed by the prosecution and make no mention of a dismissal in the interests of justice. (Pl. Ex. A, Def 4 and third page).  Nor do defendants offer any evidence whatsoever that the dismissal was due to any sympathy for the accused or for any reason for that matter.

8

In analogous circumstances, where defendants have made no showing that any sympathy for the accused was a factor or that the dismissal was in any manner inconsistent with innocence, courts in this District have found that the criminal action was favorably terminated. In *Arum v. Miller*, 273 F. Supp. 2d 229, 234-35 (E.D.N.Y. 2003) the Court held on a more developed record than offered here:

> The Court finds that the charges against the plaintiff terminated in her favor. In the first instance, the State Court did not present any reasons for dismissing charges in the interest of justice. As such, the Court is left with no clear basis for the dismissal of charges against the plaintiff. Second, the prosecution did not state that the dismissal was out of mercy. Nor did the prosecution imply that the dismissal was out of mercy. Indeed, none of the reasons expressed by the prosecution are inconsistent with the plaintiff's innocence. And, neither the State Court nor the prosecution referred to the plaintiff's guilt or innocence. Thus, the reasons for dismissing the charges against the plaintiff were not inconsistent with her innocence.
>
> *Arum* at 234-35

Similarly, other courts have found favorable terminations or refused to find unfavorable terminations under analogous circumstances. *Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 161 (E.D.N.Y. 2014) ("Similarly, here, the State Court did not proffer reasons for dismissing the charges. Nor did the Prosecutor imply that the dismissal was out of mercy….Thus, this Court cannot conclude at this stage of the proceedings that the reasons for dismissing the charges against the Plaintiff were inconsistent with his innocence.")  Here, if the Court were to find that the charges were dismissed in the interest of justice based upon the prosecutor's mere mention of that phrase before the criminal court and the Court were to find that the malicious prosecution was thereby barred, the Court would open a door to prosecutors all over New York State to insulate police officers and potentially district attorney's from malicious prosecution claims simply by mentioning those words before the criminal courts in all cases they sought to discontinue for any reason.  Clearly, that is not what justice requires or desires and since there is no evidence of any reason why the prosecutor said "interest of justice" before the criminal court,

the termination of the prosecution cannot be considered "inconsistent with innocence" which is the standard required in New York state to find a non favorable disposition.  See, *Cantalino v. Danner*, 96 N.Y.2d 391, 396-97, 729 N.Y.S.2d 405, 409, 754 N.E.2d 164, 168 (2001) ("Rather, as we stated in *Smith-Hunter,* the question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused.  A case-specific rule is particularly appropriate for  dismissals in the interest of justice, since the trial court is required to state on the record its reasons for dismissing the criminal charges (*see,* CPL 170.40 [2]).")

C.  Initiation

As a matter of law, the filing of an accusatory instrument by the police initiates a prosecution. See *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). See also *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 532 (S.D.N.Y. 2015) (Defendant officer initiated prosecution by swearing out a felony complaint);  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("[A] jury could clearly find that [a police lieutenant] started the assault prosecution because no one disputes that he started the prosecution by filing the charges of second-degree assault."); *Rounseville v. Zahl*, 13 F.3d 625, 628 (2d Cir. 1994) (defendants swearing out of accusatory instrument showed initiation of prosecution); *Franks v. City of N.Y.*, 2015 U.S. Dist. LEXIS 72563, at *19 n.2 (E.D.N.Y. June 4, 2015) (Defendant sergeant's signing of criminal complaint initiated prosecution); *Minott v. Duffy*, 2014 U.S. Dist. LEXIS 49791, at *46 (S.D.N.Y. Apr. 8, 2014) ("it is well-established that a criminal complaint filed by a police officer can serve as the initiating act for malicious prosecution purposes"); *Burt v. Aleman*, 2008 U.S. Dist. LEXIS 35846, *5 (E.D.N.Y. 2008) ("A police officer who swears to and signs a criminal court complaint, . . . has 'initiated' a prosecution"); *Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 442 (N.D.N.Y. 1998) ("It is undisputed that [Defendant] signed the felony

complaint and, therefore, the first element is established as to him"); *Stevens v. City of N.Y.*, 2012 U.S. Dist. LEXIS 100825, at *16 (S.D.N.Y. July 17, 2012) ("no dispute that [Defendant] commenced the criminal proceeding against plaintiff--i.e., the record indicates that [Defendant's] Criminal Court Complaint was the charging document that initiated the District Attorney's prosecution of plaintiff").

Here it is undisputed that Defendant Clark signed the criminal court complaint against Plaintiff. (Pl. Ex. A., p.2) In fact, there was no complaining witness in this case, only the allegations of defendant Clark which initiated the prosecution.  Nothing more is required to satisfy the initiation prong of the malicious prosecution cause of action.  As will be argued below, while the factual portion of the criminal court complaint is only a few sentences, defendant Clark disavowed its truth at his deposition.

D.  Malice

It has long been held that malice can be inferred from a lack of probable cause.  Here, there was both a lack of probable cause to believe plaintiff was guilty of obstruction where he admittedly stood at the entrance of his apartment door and asked officers for a warrant to enter his apartment.  Moreover, defendants' disavowal of the truth of the assertions alleged in the criminal court complaint as well as the fabrication of other evidence before the District Attorneys' office as discussed below could lead a jury to believe defendants acted with malice when the criminal court complaint was sworn out and plaintiff was prosecuted.  See, *Rhooms v. City of N.Y.,* No. 11-CV-5910 (PKC) (RER), 2017 U.S. Dist. LEXIS 49538, at *26 (E.D.N.Y. Mar. 31, 2017) ("Aside from directly contradicting the record, which provides an adequate basis for a jury to find that Defendants all played a significant role in the District Attorney Office's decision to prosecute, this argument also fails because "[a] lack of probable cause"—which a

reasonable jury could find here, see supra—"generally creates an inference of malice." *Rentas v. Ruffin*, 816 F.3d 214, 221-22 (2d Cir. 2016) (quoting *Boyd v. City of N.Y.*, 336 F.3d 72, 78 (2d Cir. 2003)). See also, *Jenkins v. City of NY*, 2013 U.S. Dist. LEXIS 33331, at *33-34 (S.D.N.Y. Mar. 6, 2013) ("As malice can be inferred if a proceeding was initiated without probable cause, *Stansbury v. Wertman*, 2012 U.S. Dist. LEXIS 8153, 2012 WL 183849, at *9 (S.D.N.Y. Jan. 24, 2012), once a question of material fact is found as to probable cause, "the element of malice also becomes an issue of material fact" and precludes dismissal on summary judgment. *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003).")

IV.    Plaintiff's Denial of Fair Trial is Viable

"A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights. *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010). A police officer denies a defendant a fair trial when she creates "false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). A fair trial claim may also arise where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant. The latter theory of liability is essentially a civil claim seeking damages for a Brady violation. *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015) ("Police officers can be held liable for Brady due process violations under § 1983 if they withhold exculpatory evidence from prosecutors."); see *Poventud v. City of New York*, 750 F.3d 121, 132 n.12 (2d Cir. 2014) (en banc) ("We reject out of hand defendants' contention that Brady violations cannot provide a basis for a § 1983 claim.")." *Fappiano v. City of N.Y.*, 640 F. App'x 115, 118 (2d Cir. 2016). See also, *Buie v. City of N.Y.*, No. 12 CV 4390 (RJD) (CLP), 2015 U.S. Dist. LEXIS 147642, at *29

12

(E.D.N.Y. Oct. 30, 2015) (finding that the materiality of the information allegedly falsified is central to the claim).

Defendants argue that since there is no evidence of fabricated allegations made by the defendants, plaintiff fair trial claim should be dismissed. However, the Court need not look any further than the only document filed with the Court to demonstrate how defendants fabricated evidence as against plaintiff and thereby caused a baseless prosecution to proceed and ultimately, be dismissed. In the criminal court complaint, annexed to plaintiff's moving papers as (Pl. Ex. A, 2nd Page), defendant Clark alleged as follows:

> Deponent states that, at the above time and place, in response to a 911 call of a crime at the location and while the deponent was conducting an investigation, the deponent instructed the defendant to allow the deponent into the location and that the defendant did refuse the deponent's order and that after the deponent warned the defendant that the defendant could be placed under arrest, the defendant continued to refuse the deponent's order.

At deposition, however, defendant Clark completely disavowed the truth of this allegation.

Defendant Clark testified:

> Q:    Before you guys entered the apartment did you tell Mr. Thompson that he could be placed under arrest for not letting you in?
>
> A:    No.  (EBT Pagiel Clark, hereinafter "Pl. Ex. M", p. 107, line 8-12)

This allegation was the main allegation of the criminal court complaint in that it explained and supported the obstruction charge, i.e. plaintiff refused to allow the officers into the apartment despite being warned of the consequence. Since the criminal court case was dismissed before trial, the fact that Mr. Thompson was not in fact warned was never revealed during the pendency of the criminal case. It has now been established that fabrications in a criminal court complaint can form the basis of a denial of fair trial cause of action. See, *Struthers v. City of N.Y.,* No. 12-CV-242, 2013 U.S. Dist. LEXIS 76916, at *46 (E.D.N.Y. May 31, 2013) ("I find, however, that

there is a triable issue of fact as to whether Morales fabricated information contained in the criminal complaint.")

Defendant Clark also misled the District Attorney's office in the case in several respects during his initial meeting with the prosecutor.  Specifically, defendant Clark falsely informed the prosecutor that he met plaintiff in the lobby of the building and then followed plaintiff to his door. (Complaint Room Screening Sheet, hereinafter "Pl. Ex. N")  Plaintiff specifically refutes this testimony and testified he never left his apartment after the EMT's came to the apartment and before the officers came to the door, five minutes later. (EBT Larry Thompson, hereinafter "Pl. Ex. B", p. 26 line 20 to p. 27 line 1).  It appears that defendant Clark may have felt it necessary to falsely  allege that plaintiff was outside of his apartment in order to avoid the legal requirement for either a search warrant or an arrest warrant, both of which the officers knew they did not have.

Defendant Clark also falsely informed the prosecutor that plaintiff "slapped the arresting officers' partner's hand down" while defendant Montefusco, defendant Clark's partner, was attempting to open the apartment door. ("Pl. Ex. N").  Both Clark and Montefusco disavow the truth of this statement at their depositions and admit that either no slap occurred or that they do not recall a slap occurring. (Pl. Ex. M, p. 125 line 20 p. 126 line 15) (Pl. Ex. F, p. 44 lines 4-7) Instead, Montefusco admits that he attempted to move past plaintiff and made contact with plaintiff and only then did plaintiff push Montefusco back to avoid being forced to allow Montefusco into the apartment.  (Pl. Ex. F, p. 41, line 21 to p. 43 line 16).  Clark not only fabricated that plaintiff slapped his partner's hand down but he misled the prosecutor to believe that plaintiff initiated physical contact with the officers when that was, in fact, not the case. Officer Montefusco admitted at deposition that he initiated contact with plaintiff in an attempt to

14

gain entrance into the apartment.  This critical fact was omitted in defendant Clark's discussion with the intake district attorney, David Raskin.  (See Pl. Ex. N)

Each of these fabrications taken separately or together painted a very skewed picture of what in fact transpired.  Nowhere does defendant Clark inform that prosecutor that plaintiff demanded that officers produce a warrant to enter his apartment, a statement even plaintiff's neighbors heard him say.  (Pl. Ex. G, p. 9 line 6 to p. 10 line 25)  Defendant Clark stressed to the District Attorney's office the warning that he issued to plaintiff that he would be arrested if he refused to allow entry, however, this warning admittedly never occurred.  The District Attorney relied on this warning to draft the criminal court complaint and the allegation of a warning was, in fact, the prime allegation in the criminal court complaint to support the obstruction cause of action.  Had the criminal court accurately summarized that officers received an anonymous 911 call alleging possible child abuse, arrived at an apartment and were refused entry due to the occupant insisting upon a warrant, the elements of a prosecution for obstruction would not have been met.  Therefore, defendant Clark falsely informed the prosecutor that he warned plaintiff that his refusal to allow entry would result in his arrest.  An issue of fact therefore exists as to whether this false allegation was material to the prosecution. See generally, *Buie v. City of N.Y.*, No. 12 CV 4390 (RJD) (CLP), 2015 U.S. Dist. LEXIS 147642, at *29-30 (E.D.N.Y. Oct. 30, 2015) ("… the Court concludes that the allegedly false statements in the criminal complaint are sufficient for a reasonable jury to find that plaintiff was denied a fair trial.") See also,  *Poventud v. City of N.Y.*, No. 07-CV-3998, 2015 U.S. Dist. LEXIS 29949, 2015 WL 1062186, at *8 (S.D.N.Y. Mar. 9, 2015) (citing *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481

(1985); *Walker v. City of N.Y.*, 974 F.2d 293, 299 (2d Cir. 1992*)). Nnodimele v. Derienzo*, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 9881, at *62 (E.D.N.Y. Jan. 27, 2016).

> V.      Personal Involvement of Defendants Bertram and Rodney

Defendants take issue with the level of involvement of defendants Bertram and Rodney in this matter and allege that since plaintiff's federal claims require personal involvement, all claims as to these defendants should be dismissed.  Plaintiff will not take issue with defendant Rodney's involvement, despite his loss of his memo book and the resulting confusion as to exactly what his level of involvement was in this incident.

Defendant Bertram, however, was a supervisor on the scene of the arrest who took a report of the arrest and thereafter was personally involved in that he apparently directed his subordinates to prosecute plaintiff.  Defendant Bertram testified that after he arrived at the location he was informed by the officers involved as to the incident and was concerned enough about the interaction to call for legal advice at a hotline set up by the NYPD.  According to defendant Bertram, he spoke to an attorney at the NYPD legal bureau, after the arrest, to determine if the arrest was "legal."  Bertram testified he took this step solely out of curiosity as he admitted whatever the result of his investigation, Mr. Thompson still would have been prosecuted and sent to Central Booking.  (EBT Anthony Bertram, hereinafter "Pl. Ex. K", p. 33 line 25 to p. 35 line 4; p. 46 lines 8-12).

In a recent case, your Honor addressed similar issues in *Case v. City of N.Y.*, 2017 U.S. Dist. LEXIS 19374, at *46-47 (S.D.N.Y. Feb. 10, 2017) ("The Court finds that these allegations provide a plausible basis from which to conclude that Esposito participated directly in Kushneir's arrest. *See Provost*, 262 F.3d at 155; *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 262,

269 (S.D.N.Y. 2013) (finding, on motion for summary judgment, that the plaintiffs "submitted

sufficient evidence to show that" Esposito was either "present for or partook in the alleged" use

of excessive force where the facts indicated that Esposito only "authorized their arrest");

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 395 (S.D.N.Y. 2013) (finding

allegations that sergeant instructed officer to use a taser on the plaintiff a second time, which

plausibly constituted excessive force, provided plausible basis for sergeant's direct participation);

*cf. id.* at 386 (dismissing excessive force claim against lieutenant where complaint alleged that he

"was never present at the scene" and did "not allege that he issued any orders to the officers who

were present"). Similarly, defendant Bertram was on the scene of arrest after the arrest and was

the supervisor who had the ability to void this arrest and prevent a baseless prosecution.  He

failed in that regard and admitted that he provided defendants Clark and Montefusco with

"direction" as their immediate supervisor at the scene.  (Pl. Ex. K, p. 5 line 21 to p. 6 line 3 and

p. 43 line 20 to p. 44 line 2)

 Bertram was in a position of authority to direct the officers under his supervision and

therefore was sufficiently personally involved in the arrest and prosecution of the plaintiff.

Defendants fail to address plaintiff's cause of action sounding in failure to intervene.  Failure to

intervene applies not only to excessive force causes of action, but to all causes of action where an

officer has a reasonable opportunity to intercede and prevent or limit a civil rights violation from

occurring.  "It is widely recognized that all law enforcement officials have an affirmative duty to

intervene to protect the constitutional rights of citizens from infringement by other law

enforcement officers in their presence." See, *Feinberg v. City of N.Y.*, No. 99 CV 12127 (RCC),

2004 U.S. Dist. LEXIS 16098, at *12 (S.D.N.Y. Aug. 12, 2004) *Anderson v. Branen,* 17 F.3d

552, 557 (2d Cir. 1994). "An officer who fails to intercede is liable for the preventable harm

17

caused by the actions of the of the other officers where that officer observes or has reason to know … that a citizen has been unjustifiably arrested …." *Id.* (citing *Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir. 1982)).  Here, as argued above, defendant Bertram was physically present at the scene of the arrest and spoke to the arresting officers.  He claims he was concerned enough about the interaction to call NYPD legal after the fact and obtain an opinion about the matter.  Therefore, Bertram was in a position to intervene and prevent both further arrest processing and the prosecution of the plaintiff.  This should have been done immediately, however, certainly should have been done when the officers realized the baby was completely normal which was either following an initial check by the EMT's in the apartment or at the hospital where the baby was cleared.  Both of these events occurred on the night of the arrest.

## VI.    Qualified Immunity

Qualified immunity does not rest in public officials when they "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (Jan. 21, 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Clearly established for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (quotations omitted) (citations omitted).

At the time of plaintiff's arrest, "[t]he right to be arrested or prosecuted without probable cause ha[d], of course, long been a clearly established constitutional right." *Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  Although an officer need only have "arguable" probable cause, it is crucial to note that:

> "Arguable" probable cause should not be misunderstood to mean "almost"
> probable cause. The essential inquiry in determining whether qualified immunity
> is available to an officer accused of false arrest is whether it was objectively
> reasonable for the officer to conclude that probable cause existed.

*Jenkins v. City of New York*, 478 F.3d 76, 87 (2d cir. 2007) (citing, e.g., *Anderson v. Creighton*, 483 U.S. 635, 644 (1987)).  Arguable probable cause is assessed under the same definition and requirements as probable cause and exists only "if *'at the moment the arrest was made* . . . the facts and circumstances *within the[ officers'] knowledge* and of which they *had reasonably trustworthy information* were sufficient to warrant a prudent man in believing' that [the suspect] had violated the law."  *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (citations omitted) (emphasis in original).  Overall:

> In order to be entitled to summary judgment on such a defense, the officer must
> adduce sufficient facts that no reasonable jury, looking at the evidence in the light
> most favorable to, and drawing all inferences most favorable to, the plaintiff,
> could conclude that it was objectively unreasonable for the officer to believe that
> probable cause did not exist.

*Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (citing, e.g., *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Viewing the facts in the light most favorable to the Plaintiff, as this Court must, several of the facts relied upon by defendants in their attempt to claim qualified immunity are disputed. For example, defendants claim the caller was not anonymous, however, in a report generated after the incident defendants wrote that the caller was anonymous and the officers admit to not speaking to the caller before they forced themselves into the apartment.  (Pl. Ex. A, Def 12). Similarly, defendant Montefusco claims that when he arrived at the apartment he was "just investigating" but saw a "scared woman" and heard a baby crying. As mentioned above, whether the baby was crying is a disputed issue of fact, see page 7 above, footnote one. While plaintiff argues this was insufficient corroboration to justify a *Terry* stop, let alone a forced entry into an

19

apartment which enjoys the highest Fourth Amendment protection:  "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Id.* at 748 (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972)).  Similarly, defendant Clark alleged to the District Attorney that plaintiff slapped officer Montefusco's hand then disavowed this allegation during depositions and claimed plaintiff pushed officer Montefusco, however, Clark was silent as to the admitted fact that Montefusco made initial contact plaintiff in his attempt to enter the apartment. All of these factual issues impact the qualified immunity analysis such that a summary disposition on qualified immunity is not appropriate.

Moreover, defendants violated plaintiff's clearly established right not to be arrested without probable cause and his clearly established right to be free from warrantless searches and seizures. See, *Scott v. City of Mt. Vernon*, No. 14-CV-4441 (KMK), 2017 U.S. Dist. LEXIS 47856, at *106 (S.D.N.Y. Mar. 30, 2017)  ("Police officers are, to be sure, sometimes required to make split-second judgments about the reasonableness of a warrantless entry, and the Court understands the difficulty an officer faces when confronted with, as Defendants call it, a "now or never" scenario. (*See* Defs.' Mem. 9.) But this was no such scenario—there was no hot pursuit, no imminent danger, and simply no reason to believe, beyond pure speculation, that evidence of a crime could be found in the Apartment.")  Defendants in *Scott* also alleged the emergency aid doctrine as a basis for the warrantless entry, however, the Court found issues of fact to preclude any summary determination.  See also, *Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 503 (S.D.N.Y. 2015) (denying summary judgment based upon qualified immunity for both the decision to enter a dwelling and post entry conduct where defendants alleged they were concerned for the occupants "well being.")

In determining whether qualified immunity applies in the emergency aid context, Circuit Courts

have focused on the level of corroboration witnesses at the residence before the forced entry.  As

was held in *Osborne v. Harris Cty.*, 97 F. Supp. 3d 911, 926-27 (S.D. Tex. 2015):

> The officers knocked on Osborne's door. He "opened the door, stepped out onto [his]
> landing[,] and closed the door behind" him to avoid letting his dog escape. (Docket Entry
> No. 35, Ex. A, ¶ 4). He repeatedly told the officers that they had the wrong apartment and
> that no one else was inside. He disputes that he was "nervous." These disputed issues
> preclude summary judgment for the officers on their qualified immunity defense to the
> warrantless entry claim.
>
> The case law is consistent with this result. *See Sandoval v. Las Vegas Metro. Police
> Dep't*, 756 F.3d 1154, 1165 (9th Cir. 2014) (holding that the officer was not entitled to
> qualified immunity under the emergency-aid exception when he "arrived at a home to
> find a pattern consistent with either lawful or unlawful activity, but with no evidence of
> weapons, violence, or threats"), *cert. denied*, No. 14-528, 135 S. Ct. 1401, 191 L. Ed. 2d
> 360, 2015 U.S. LEXIS 1385, 2015 WL 731872 (U.S. Feb. 23, 2015); *United States v.
> Timmann*, 741 F.3d 1170, 1179 (11th Cir. 2013) (observing that the cases applying the
> emergency-aid exception "have in common the indicia of an urgent, ongoing emergency,
> in which officers have received emergency reports of an ongoing disturbance, arrived to
> find a chaotic scene, and observed violent behavior, or at least evidence of violent
> behavior."); *Nelms v. Wellington Way Apartments, LLC*, 513 F. App'x 541, 545 (6th Cir.
> 2013) ("[E]ach time this court has upheld a warrantless entry based upon the emergency
> aid exception, credible and reliable evidence established the potential for injury to the
> officers or others and the need for swift action." (quotations and alterations omitted));
> *Storey v. Taylor*, 696 F.3d 987, 996 (10th Cir. 2012) ("[A] report of a loud argument—
> without more—that has ceased by the time an officer arrives, although relevant to the
> exigent circumstances inquiry, does not alone create exigent circumstances to justify a
> warrantless arrest."); *United States v. Hill*, 649 F.3d 258, 265 (4th Cir. 2011) (concluding
> that exigent circumstances did not justify an officer's warrantless entry based on the
> officer's observations that: the door looked like it had been kicked in; there was some
> noise inside and someone home but no response; an occupant had previously called the
> police weeks before to remove the defendant; and it "sounded like someone attempting to
> lock a latch on the door"); *see also Georgia v. Randolph*, 547 U.S. 103, 118, 126 S. Ct.
> 1515, 164 L. Ed. 2d 208 (2006) (affirming the "the authority of the police to enter a
> dwelling to protect a resident from domestic violence; *so long as they have good reason
> to believe such a threat exists*" (emphasis added)).

Similarly in *Thompson*, the mere allegations that a baby was crying and that a mildly retarded

woman "looked nervous" is insufficient corroboration to justify a warrantless entry.  Mr.

Thompson did nothing but refuse to allow the officers inside his apartment without a warrant and

told the officers that they had the wrong apartment.   Just as in *Osborne*, qualified immunity is not available as the right to be free from a warrantless entry was clearly established at the time of this incident.

In sum, qualified immunity is not available to the defendants.  A jury could reasonably determine that there was an insufficient basis to force an entry into plaintiff's apartment where plaintiff was standing at the door discussing the matter with him and asking them for a warrant. Defendants had very little information to base their decision on and admitted they were "just investigating" when they arrived at the apartment.  Since they never spoke to the 911 caller before forcing entry and the 911 caller had refused to talk to the EMT's previously, defendants had no objectively reasonable basis to force an entry.  The fact that the caller was known by the EMT's to be "maybe mentally retarded" before the forced entry is also a fact that creates a unique situation and not appropriate for summary disposition. (Pl. Ex. D., p.18 line 24)

## **CONCLUSION**

As argued in plaintiff's moving papers and reiterated above, Plaintiff is entitled to partial summary judgment on his claims of false arrest and the Fourth Amendment violation in the form of a warrantless entry.  Furthermore, Plaintiff is entitled to spoliation sanctions, including an adverse inference instruction, an award of attorney's fees in connection with the motion for spoliation sanctions. Lastly, plaintiff is entitled to proceed to trial on his remaining claims, excessive force, failure to intervene and denial of fair trial.   Viewing the facts and evidence in a light most favorable to the Defendants, plaintiff was maliciously prosecuted on fabricated evidence, specifically the central false evidence that plaintiff was warned that he would be arrested if refused entry to the officers despite the fact that they possessed no warrant.  Plaintiff

has proffered facts establishing Defendants' personal involvement, with the exception of

defendant Rodney, and the officers personal involvement is not actually in dispute.

For the foregoing reasons, Plaintiff respectfully requests that this Court finds that plaintiff

has presented sufficient evidence to proceed to trial on his malicious prosecution, denial of fair

trial, excessive force and failure to intervene causes of action and any other relief as this Court

may deem just and proper.

Dated:  Brooklyn, New York
         April 6, 2017

                          Respectfully Submitted,

                          **LAW OFFICE OF DAVID A. ZELMAN**

                            /S
                          _____

                          By: **David A. Zelman, Esq.**