UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LARRY THOMPSON,

                Plaintiff,

         v.

PAGIEL CLARK,

                Defendant.

**MEMORANDUM & ORDER**
14-CV-07349 (HG) (RML)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff's claim for malicious prosecution against Defendant Pagiel Clark has been reinstated by the U.S. Supreme Court after Judge Weinstein, who previously presided over this case, dismissed the claim as a matter of law following the close of evidence at trial, and before presenting it to the jury with Plaintiff's remaining claims, all of which the jury rejected. *See Thompson v. Clark*, 142 S. Ct. 1332 (2022). Defendant has moved for summary judgment dismissing that claim based on the undisputed facts demonstrated by the evidence admitted at trial and the jury's verdict. ECF No. 163. Plaintiff opposes that motion and insists that a second trial is necessary, principally because Judge Weinstein declined to dismiss Plaintiff's malicious prosecution claim during a pre-trial summary judgment motion. ECF No. 77.

    The Court grants Defendant's motion for summary judgment. Based on the expanded factual record and Plaintiff's own account of the relevant facts, no reasonable juror could conclude that Defendant lacked probable cause to submit to state prosecutors a criminal complaint charging Plaintiff with the misdemeanor of obstructing governmental administration. Alternatively, the Court holds that Defendant is entitled to qualified immunity in bringing that charge. Plaintiff's separate charge for the misdemeanor of resisting arrest also fails to support a malicious prosecution claim because Plaintiff cannot demonstrate that the resisting arrest charge

led to any deprivation of his liberty that was independent of the valid charge for obstructing governmental administration.

## FACTUAL BACKGROUND

Plaintiff was arrested in January 2014 during an encounter with four police officers outside his apartment. ECF No. 169 ¶¶ 1, 7. Three of those police officers were formerly Defendants in this case, but the claims against them were dismissed after they received a jury verdict in their favor at trial. *See* ECF No. 137. The fourth police officer was Defendant Clark, who remains as the sole Defendant in this case. Defendant and the other officers came to Plaintiff's apartment, together with two emergency medical technicians, because the police had received a call from the sister of Plaintiff's then-fiancée and the mother of his infant child, who was living in Plaintiff's apartment at the time. ECF No. 169 ¶¶ 1–6. The parties agree that the information conveyed during the call included allegations of child abuse occurring in Plaintiff's apartment. *Id.* The parties disagree about the exact information provided during the phone call and whether the information was credible enough for Defendants reasonably to believe that Plaintiff had committed any misconduct involving his child. *Id.* They further dispute whether the information suggested that there was any abuse currently in progress so that exigent circumstances justified Defendants' warrantless entry into Plaintiff's apartment. *Id.*

The parties dispute what transpired when Plaintiff answered his apartment door and spoke to Defendants—particularly whether Plaintiff used any physical force against Defendants and whether he initiated that force. During Plaintiff's trial testimony, he acknowledged that he stood in his doorway and "told the officers that they couldn't come in without a search warrant" and that he would not "agree to [them] coming in without it." ECF No. 147 at 708:16–19. At some point during their conversation, Plaintiff testified that he "asked for a supervisor and a

sergeant." ECF No. 146-2 at 615:21–23; ECF No. 147 at 710:15–24. Plaintiff conceded that he did not "let them in." ECF No. 146-2 at 616:7–10.

After refusing to let the first responders enter, Plaintiff said that one of the police officers, former Defendant Montefusco, "rushed me and grabbed my arm because I was holding the door open and grabbed my arm and then put me in a choke lock front." *Id.* at 611:10–12, 611:18–612:5. Plaintiff insisted that Officer Montefusco started the "physical interaction" after Plaintiff made clear that he would not let the officers into his apartment. *Id.* at 617:12–23. After Officer Montefusco allegedly initiated the use of force, Plaintiff said that the remaining officers, including Defendant Clark, joined in and pushed Plaintiff to the floor. *Id.* at 620:24–623:4. Plaintiff testified that he did not initiate force by pushing an officer and that once the officers began to use force, he did nothing to resist their arrest. *Id.* at 617:24–25, 619:10–16. Plaintiff estimated that his conversation with the officers leading up to his arrest lasted a total of "three to four minutes." *Id.* at 615:13–16.

The parties agree that as a result of Plaintiff's encounter with the police at his apartment, he was arrested, detained for approximately one day while waiting to be arraigned, and that after being arraigned, he was released on his own recognizance. ECF No. 169 ¶¶ 10–11. Plaintiff was charged with two offenses, both of which are Class A misdemeanors: (i) obstructing governmental administration in the second degree ("OGA"), in violation of N.Y. Penal Law § 195.05, and (ii) resisting arrest, in violation of N.Y. Penal Law § 205.30. *Id.* ¶ 10. Defendant Clark submitted the sworn criminal complaint that was used to charge Plaintiff. ECF No. 57-1 at 2. Based on Plaintiff's account of the events, he asserts that Defendant Clark falsely stated in the criminal complaint that Defendant Clark had "warned" Plaintiff that he "could be placed under arrest" and that, once officers "attempted to place [Plaintiff] under arrest, [Plaintiff] began to flail

3

[his] arms preventing [officers] from placing handcuffs on [Plaintiff]." *Id.* After Plaintiff was arraigned, he made two court appearances, after which the criminal charges against him were dismissed. ECF No. 169 ¶ 12.

## PROCEDURAL HISTORY

Plaintiff asserted several claims against Defendant Clark and his former co-Defendants, all of which were based on 42 U.S.C. § 1983 ("Section 1983"). *See* ECF No. 34 ¶¶ 22–88. Those claims consisted of malicious prosecution, false arrest, excessive force, denial of a right to a fair trial, failure to intervene, and denial of medical treatment. *Id.* Plaintiff's final claim was that Defendants violated Section 1983 and his rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment by entering his apartment without either a warrant or the existence of exigent circumstances justifying a warrantless entry. *Id.* ¶¶ 83–88.

Only Plaintiff's malicious prosecution claim remains following pre-trial summary judgment motions decided by Judge Weinstein and a trial presided over by Judge Weinstein before the case was reassigned. As explained in greater detail below, Judge Weinstein denied the portion of Defendants' pre-trial motion for summary judgment seeking the dismissal of Plaintiff's malicious prosecution claim. ECF No. 77. Although the jury rendered a verdict completely in favor of Defendants with respect to Plaintiff's other claims, *see* ECF No. 137, Plaintiff's claim for malicious prosecution never reached the jury. Following the close of evidence, Judge Weinstein granted Defendants' motion pursuant to Rule 50 for judgment as a matter of law dismissing Plaintiff's malicious prosecution claim. That dismissal was based solely on Plaintiff's failure to demonstrate that the prosecution against him in state court was terminated in his favor in a manner that affirmatively indicated his innocence. ECF No. 147 at 685:15–691:6. In making their Rule 50 motion, Defendants did not argue that Plaintiff's

4

malicious prosecution claim failed for any other reason, *see id.*, thereby waiving Defendant Clark's ability to renew his Rule 50 motion on any other basis.

Plaintiff appealed the dismissal of his malicious prosecution claim to the Second Circuit and, ultimately, to the Supreme Court. During that appeal, the Supreme Court abrogated the previously-existing Second Circuit case law regarding malicious prosecution claims by "hold[ing] that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).[1] In remanding the case, the Supreme Court did not hold that Plaintiff had prevailed on his malicious prosecution claim or that the claim required a new trial and instead "remand[ed] for further proceedings consistent with [its] opinion." *Id.* In doing so, the Court described several additional issues of fact and law that potentially remained relevant to Plaintiff's malicious prosecution claim on remand, "including whether [Plaintiff] was ever seized as a result of the alleged malicious prosecution, whether he was charged without probable cause, and whether [Defendant] is entitled to qualified immunity." *Id.* The Court said that "the Second Circuit or the District Court as appropriate may consider those and other pertinent questions." *Id.*

The Second Circuit's mandate transferring jurisdiction back to this Court similarly did not require a new trial. ECF No. 158. That mandate simply "VACATE[D] the judgment of the district court," which had stated that Plaintiff was entitled to no damages from Defendant Clark and the other, former defendants, and "REMAND[ED] this case for further proceedings consistent with the Supreme Court's decision." *Id.*

---

[1] Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

5

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," a plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing complaint).

Judge Weinstein's prior decision denying summary judgment in favor of Defendant Clark on Plaintiff's malicious prosecution claim, *see* ECF No. 77 at 26–27, does not preclude the Court from granting summary judgment at this stage. Plaintiff's assertion that the prior summary judgment decision is binding as the law of the case is incorrect. The law of the case doctrine

6

requires that "where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Kerman v. City of N.Y.*, 374 F.3d 93, 109 (2d Cir. 2004). However, with respect to a court's own decisions, "[t]he doctrine of law of the case is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013). Reconsidering whether summary judgment is appropriate here is particularly appropriate because of the expanded factual record presented at trial and the jury's resolution of certain prior factual disputes that existed at the summary judgment stage—principally whether Defendants' entry into Plaintiff's apartment was unlawful.

Even if the Second Circuit's mandate had expressly remanded Plaintiff's malicious prosecution claim for a new trial, "[t]he granting of a new trial does not preclude a party from moving for summary judgment." *Adams v. Yale-New Haven Hosp.*, No. 06-cv-1166, 2012 WL 359968, at *2 (D. Conn. Feb. 2, 2012). The Second Circuit has affirmed multiple decisions granting summary judgment after either it or the district court had ordered a new trial. *See Girden v. Sandals, Int'l*, 67 F. App'x 27, 28 (2d Cir. 2003); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 260–61 (2d Cir. 2002). *See also Callahan v. Wilson*, 863 F.3d 144, 154 (2d Cir. 2017) (remanding case "for a new trial" because of improper jury instruction); *Callahan v. Cty. of Suffolk*, No. 12-cv-2973, 2022 WL 1283610, at *3 (E.D.N.Y. Apr. 29, 2022) (granting summary judgment motion in favor of defendants on remand).

Just as Judge Weinstein's prior denial of summary judgment does not require the Court to deny summary judgment again, the factual issues determined by the jury's verdict are not binding through collateral estoppel, as they would be in a subsequent lawsuit between the parties.

7

*DeVilla v. Schriver*, 245 F.3d 192, 196–97 (2d Cir. 2001).  Instead, the Second Circuit has explained that, in circumstances like these, in which some of a plaintiff's claims are dismissed at trial before reaching the jury, and then reinstated on appeal, the district court on remand may defer to the jury's verdict as the "law of the case" but may not automatically give it preclusive effect.  *Id.* at 197.  A district court has discretion to decide how much weight to assign to a jury's verdict, and it should apply that discretion based "on the interpretation and quality of the verdict itself."  *Bradshaw v. Hernandez*, 788 F. App'x 756, 759 (2d Cir. 2019) (affirming district court's grant of motion for summary judgment on remand after trial despite district court having denied a pre-trial summary judgment motion prior to remand).  Granting a second motion for summary judgment on one claim after a trial on separate claims is, therefore, appropriate when "the jury's subsequent verdict has rendered immaterial any disputes of fact that may have existed at the [pre-trial] summary-judgment stage."  *Id.*

## DISCUSSION

Plaintiff's only remaining claim asserts malicious prosecution against Defendant Clark based on Section 1983.  "To prevail on a malicious prosecution claim under . . . federal law, a plaintiff must show:  (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice."  *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021).  Since Plaintiff has brought his malicious prosecution claim pursuant to Section 1983 rather than New York state law, he also "must demonstrate a sufficient post-arraignment liberty restraint."  *Id.* at 162.

"Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  *Id.*

8

at 166. This is a slightly higher standard than the probable cause required to defeat a false arrest claim under Section 1983, which only requires the arresting officer to "ha[ve] knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* at 158. For a defendant successfully to invoke probable cause to defeat a claim for malicious prosecution, "probable cause must be shown as to each crime charged in the underlying criminal action." *Id.* at 166.

## I.   Defendant Clark Had Probable Cause to Charge Plaintiff with OGA

Defendant Clark had probable cause to charge Plaintiff with OGA even according to Plaintiff's account of the events leading up to his arrest, and summary judgment dismissing Plaintiff's claim for malicious prosecution based on the OGA charge is therefore appropriate. The crime of OGA "requires one of the following: (1) intimidation, (2) physical force or interference, or (3) any independently unlawful act." *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016). "Any interference must be physical and must obstruct an official function authorized by law." *Id.* The Second Circuit has therefore held that probable cause to prosecute a plaintiff for OGA does not exist when the plaintiff simply refuses to answer police questions, *id.* at 112, or attempts orally to dissuade police officers from taking a particular action, *see Zellner v. Summerlin*, 494 F.3d 344, 376–77 (2d Cir. 2007) (holding that disputes of fact about whether plaintiff attempted physically to block traffic at protest site precluded defendants' post-trial motion that they were entitled to qualified immunity). A plaintiff's incidental, unintended contact with a police officer is also insufficiently physical to trigger probable cause to charge the plaintiff with OGA. *Barksdale v. Colavita*, 506 F. App'x 82, 85 (2d Cir. 2012) (reversing summary judgment in favor of defendants on malicious prosecution claim, without prejudice to district court finding qualified immunity at trial following the jury's resolution of disputed facts).

9

Although a plaintiff's interference with a lawful governmental function must be "physical" in nature, a plaintiff can commit OGA by "physically interfer[ing]" with that governmental function without using "physical force." *Kass v. City of New York*, 864 F.3d 200, 209–10 (2d Cir. 2017) (granting judgment on the pleadings in favor of defendants, holding that their decision to arrest plaintiff for OGA was protected by qualified immunity). "[A]n officer may consider both words and deeds in determining whether the individual's conduct is sufficiently obstructive to justify an arrest" even though a plaintiff's obstructions "cannot consist solely of verbal statements." *Id.* at 209.

As mentioned above, Judge Weinstein previously denied Defendants' motion for summary judgment on several of Plaintiff's claims, including his claim for malicious prosecution. The denial of summary judgment on the malicious prosecution claim was based on the following chain of reasoning. First, Judge Weinstein held that there were disputes of fact about whether Defendants' warrantless entry into Plaintiff's apartment was justified by exigent circumstances—*i.e.*, a reliable allegation that child abuse was being committed inside. ECF No. 77 at 24–25. On that basis, Judge Weinstein denied summary judgment on Plaintiff's unlawful entry claim. *Id.* Second, Judge Weinstein explained that Defendants were not permitted to arrest Plaintiff for OGA unless Defendants had a lawful reason to enter his apartment. *Id.* at 25–26. The factual dispute about whether Defendants had a lawful reason to enter, therefore, required the denial of summary judgment on Plaintiff's false arrest claim. *Id.* Third, and finally, Defendants could not have had probable cause to charge Plaintiff with resisting arrest if their attempt to arrest him for OGA had been unlawful, and the charge for OGA would also have lacked probable cause if Defendants had no lawful reason to enter Plaintiff's apartment. *Id.* at 26–27.

10

Accordingly, Judge Weinstein's denial of summary judgment on Plaintiff's malicious prosecution claim hinged on a single disputed issue—whether Defendants had a lawful reason to demand entry to Plaintiff's apartment. The jury resolved that question at trial by answering "NO," with respect to each Defendant, including Defendant Clark, to the question, "Did you find that a defendant unlawfully entered plaintiff's apartment?" ECF No. 137 at 1. Since the jury was considering a more expansive record than Judge Weinstein did on summary judgment and the jury's answer resolving this previously disputed issue was unambiguous, the Court defers to the jury's conclusion as the law of the case. *See Bradshaw*, 788 F. App'x at 759.

Having resolved the issue of whether Defendants were performing a lawful function when seeking to enter Plaintiff's apartment, the conclusion that Defendant Clark had probable cause to charge Plaintiff with OGA flows as a matter of law from Plaintiff's own account of the events leading to his arrest. As explained above, Plaintiff testified at trial that he physically blocked Defendants' path of entry to his apartment by standing in the door and refusing orally to let them enter. ECF No. 146-2 at 611–23. The Second Circuit has held that, when police officers have a lawful basis "to enter peoples' homes" to investigate potential child abuse, a plaintiff's refusal to open the door for those officers "[i]s *not* pure speech" and instead satisfies "the physical force or interference element of the obstructing governmental administration statute." *Shaheed v. Kroski*, 833 F. App'x 868, 870–71 (2d Cir. 2020) (emphasis in original) (affirming dismissal of malicious prosecution claim where officers' entry into plaintiffs' home was authorized by a "New York Family Court order[]"). Plaintiff's disputes about whether he used physical force against any Defendant or which party initiated the use of force, therefore, do not preclude summary judgment.

Alternatively, even if Defendant Clark did not have probable cause to charge Plaintiff with OGA, he is entitled to qualified immunity based on Plaintiff's account of Plaintiff's interactions with Defendants. "An arresting officer is entitled to qualified immunity even if probable cause is lacking so long as arguable probable cause was present when the arrest was made." *Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022). "A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.*

Plaintiff was arrested and charged in January 2014. ECF No. 169 ¶¶ 1, 7. As of that time, the Second Circuit had held that a plaintiff's act of remaining in her locked car and refusing police instructions to exit the vehicle—without using any other means of physical force to impede the officers' work—would have given a reasonable officer probable cause to charge the plaintiff with OGA. *Lennon v. Miller*, 66 F.3d 416, 424–25 (2d Cir. 1995) (granting summary judgment in favor of defendants on false arrest and malicious prosecution claims based on qualified immunity). A district court within this Circuit had similarly held that police officers had probable cause to charge a plaintiff with OGA for refusing to follow police instructions to open his apartment door even though, once the officers had forced the door open, the plaintiff "was sitting on the couch with his feet on the coffee table watching television" and not using any physical force to impede the officers' entry. *Johnson v. City of New York*, No. 05-cv-7519, 2008 WL 4450270, at *10 (S.D.N.Y. Sept. 29, 2008) (granting summary judgment dismissing malicious prosecution claim). Based on this case law defining the circumstances under which an officer could have charged a person with OGA, officers of reasonable competence could have

concluded that Plaintiff's act of standing in his apartment doorway and insisting that Defendants were not permitted to enter rose to the level of OGA.

The fact that the parties dispute whether some of the facts included in Defendant Clark's complaint actually occurred—particularly whether Plaintiff used any physical force—does not preclude the Court from deciding that the undisputed facts would have established probable cause to charge Plaintiff with OGA. A police officer's "exaggerat[ion]" of disputed facts in a criminal complaint does not eliminate the probable cause to charge a plaintiff. *Soomro v. City of New York*, 739 F. App'x 51, 53–54 (2d Cir. 2018) (affirming summary judgment in favor of defendants on malicious prosecution claim). This is true even if the information that a police officer provides to prosecutors is potentially false, rather than a mere exaggeration. *See Frost v. N.Y. City Police Dep't*, 980 F.3d 231, 242–43 (2d Cir. 2020) (affirming summary judgment dismissing malicious prosecution claim, despite holding that the same allegedly false information precluded granting summary judgment to defendants on plaintiff's claim for denial of a right to fair trial). Similarly, the allegedly false facts in Defendant Clark's complaint do not preclude a finding that he is entitled to qualified immunity. *See Richardson v. McMahon*, No. 22-582-cv, 2023 WL 3102910, at *2 (2d Cir. Apr. 27, 2023) (holding that officer's alleged false statements did not deprive him of qualified immunity for malicious prosecution claim, although acknowledging that such statements may have supported a separate claim for denial of a right to a fair trial).

The alleged falsities in Defendant Clark's complaint were relevant to Plaintiff's claim for denial of Plaintiff's right to a fair trial, to which probable cause to charge Plaintiff was not a valid defense. *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277–78 (2d Cir. 2016) ("[A] Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of

13

false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff."); *Frost*, 980 F.3d at 250 ("[F]air trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims, and . . . therefore probable cause, which is a Fourth Amendment concept, should not be used to immunize a police officer who violates an arrestee's non-Fourth Amendment constitutional rights."). However, the jury decided in favor of Defendants on Plaintiff's fair trial claim, and Plaintiff did not challenge that aspect of the jury's verdict on appeal. *See* ECF No. 137.

Plaintiff focuses heavily on the fact that during the approximately one day between when he was arrested and when he was charged, Defendant Clark received evidence demonstrating that Plaintiff's child had not been abused. *See* ECF No. 168 at 16–17. It is true that "probable cause may dissipate" after an arrest if "the groundless nature of the charges is made apparent by the discovery of some intervening fact." *Moore v. City of New York*, 854 F. App'x 397, 399 (2d Cir. 2021) (affirming summary judgment dismissing malicious prosecution claim). However, the intervening fact must "show[] that the charges against the suspect are groundless." *Keyes v. City of New York*, No. 21-2406-cv, 2023 WL 176956, at *4 (2d Cir. Jan. 13, 2023) (affirming summary judgment dismissing malicious prosecution claim). Plaintiff was charged with OGA—not child abuse. The after-the-fact revelation that Plaintiff had not abused his child did not change the fact that exigent circumstances had justified the first responders' entry into his apartment the night before or that Plaintiff had physically impeded that entry. Therefore, the intervening facts that Plaintiff relies on did not dissipate the probable cause to charge Plaintiff with OGA and, additionally, do not defeat Defendant Clark's qualified immunity.

14

## II. Plaintiff Has Failed to Demonstrate an Independent Deprivation of Liberty Associated with His Charge for Resisting Arrest

The fact that Defendant Clark had probable cause to charge Plaintiff with OGA does not, by itself, defeat Plaintiff's claim for malicious prosecution based on the second charge for resisting arrest. When a plaintiff asserts a malicious prosecution claim after being charged with multiple offenses, the existence of probable cause to charge the plaintiff for one offense does not automatically defeat the malicious prosecution claim with respect to the other offense(s). *See Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (holding that district court erred by "instruct[ing] that if the jury found probable cause supporting any of the three charges . . . lodged against [plaintiff], no liability for malicious prosecution could be found as to any of the charges filed"). The existence of probable cause to charge a plaintiff with a lesser offense does not "foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior." *Id.*

The Court cannot separately conclude as a matter of law, based on undisputed facts, that Defendant Clark had probable cause to charge Plaintiff with resisting arrest. Plaintiff testified that he did not resist in any way once Defendants initiated physical contact with him to gain entry to his apartment and make his arrest. ECF No. 146-2 at 617:24–25, 619:10–16. Therefore, even though no reasonable jury could conclude that Defendant Clark lacked probable cause to arrest and charge Plaintiff with OGA, a reasonable jury could conclude that once the officers began to arrest Plaintiff for OGA, he committed no separate act that gave Defendant Clark probable cause to charge Plaintiff with resisting arrest.

Plaintiff's malicious prosecution claim based on his resisting arrest charge fails, however, for the separate reason that he cannot prove a deprivation of liberty associated with that charge. To prove a claim for malicious prosecution, Plaintiff "must demonstrate a sufficient post-

15

arraignment liberty restraint." *Kee*, 12 F.4th at 162. In applying this requirement, the Second Circuit has affirmed summary judgment dismissing a malicious prosecution claim because the purported restraints on the plaintiff's liberty that "resulted from the prosecution that he allege[d] was unsupported by probable cause" were independently attributable to separate charges "indisputably supported by probable cause." *Coleman v. City of New York*, 688 F. App'x 56, 58 (2d Cir. 2017). Multiple district courts within this Circuit have followed this rationale, and granted summary judgment in favor of defendants, by holding that a plaintiff cannot connect a restraint on liberty to one charge that might support a malicious prosecution claim if the plaintiff was charged with equal or lesser crimes for which a malicious prosecution claim fails.[2]

Both of the crimes with which Plaintiff was charged, OGA and resisting arrest, are Class A misdemeanors under New York law and, therefore, each subjected Plaintiff to potential punishment of the same magnitude. As in *Coleman*, Plaintiff "was released without bail after his arraignment," and the only deprivation of his liberty was his "ongoing requirement of appearing in court." *Coleman*, 688 F. App'x at 58; *see* ECF No. 169 ¶¶ 11–12. This restraint on Plaintiff's liberty would have occurred if Plaintiff had been charged with only OGA, a charge that was indisputably based on probable cause for the reasons explained above. As a result, even if there

---

[2] *Othman v. City of New York*, No. 13-cv-4771, 2018 WL 1701930, at *14 (E.D.N.Y. Mar. 31, 2018) (plaintiff could not "disentangle the constitutionally permissible court appearances he made in conjunction" with charges for which there was probable cause "from any allegedly impermissible deprivations of liberty as a result of" separate charges that purportedly lacked probable cause); *Mortimer v. Wilson*, No. 15-cv-7186, 2020 WL 3791892, at *14 (S.D.N.Y. July 7, 2020) (order of protection that plaintiff relied upon as basis for restraint on liberty could have been entered based solely upon charges for which plaintiff's malicious prosecution claim failed); *Warner v. Freeman*, No. 14-cv-1192, 2017 WL 4227655, at *2–3 (D. Conn. Sept. 22, 2017) (court appearances that would have been required by other charges based on probable cause did not satisfy deprivation of liberty requirement).

16

was no probable cause to charge Plaintiff with resisting arrest, he suffered no additional deprivation of his liberty because of that charge.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant Clark's motion for summary judgment dismissing Plaintiff's sole remaining claim for malicious prosecution in violation of 42 U.S.C. § 1983. *See* ECF No. 163. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants based on a combination of this order and the jury's prior verdict in favor of the remaining Defendants, *see* ECF No. 137, and to close this case.

SO ORDERED.

                                                      */s/ Hector Gonzalez*
                                                      HECTOR GONZALEZ
                                                      United States District Judge

Dated: Brooklyn, New York
        May 18, 2023